FILED
 2015 Feb-24  PM 01:04
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| **JOHN H. PICKETT, JR.,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )   **Case No.: 5:13-CV-2250-VEH** |
| | ) |
| **CAROLYN W. COLVIN, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
|     **Defendant.** | ) |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

Plaintiff John H. Pickett, Jr. ("Pickett") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied his application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").[1] Pickett timely pursued and exhausted his administrative remedies available before the

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits ("DIB") or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).[2] The court has carefully considered the record and, for the reasons which follow, finds that the decision of the Commissioner is due to be **AFFIRMED.**

## II.     FACTUAL AND PROCEDURAL HISTORY

Pickett was 58 years old on the date of the administrative law judge's decision. (Tr. 17, 135). He had past work as a machine operator specialist, machine operator/furnace helper, and inspector machine operator. (Tr. 26, 138). Pickett initially alleged disability beginning July 22, 2008,[3] due to back conditions, high blood pressure, problems with his feet, prostate conditions, allergies and sinus conditions, acid reflux, and joint pain (Tr. 135, 148).

Pickett protectively filed applications for a period of disability, DIB, and SSI on October 27, 2010. (Tr. 39, 41, 110-22, 135). The claims were denied initially. Pickett then requested a hearing before an administrative law judge ("ALJ"), who issued a decision, dated September 27, 2012, finding him not disabled. (Tr. 9-17, 42-44, 49-50). The Appeals Council denied his request for review on October 18, 2013. (Tr. 2). Pickett then filed a complaint seeking judicial review of that decision on December 16, 2013. (Doc. 1). The Commissioner filed an answer to the complaint

---

[2] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

[3] Pickett later amended his alleged onset date to January 24, 2011 (Tr. 24, 134).

on May 5, 2014. (Doc. 8). Pickett filed a supporting brief (Doc. 11) on July 20, 2014, and the Commissioner responded with her own (Doc. 13) on August 18, 2014.

## III. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id*.

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d

1143, 1145-46 (11th Cir. 1991).

**IV.   STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;
(2)   whether the claimant has a severe impairment;
(3)   whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4)   whether the claimant can perform his or her past work; and
(5)   whether the claimant is capable of performing any work in the national

economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id*.

## V.    ALJ FINDINGS

After consideration of the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since January 24, 2011, his amended alleged onset date.

3. The claimant has the following severe impairment: lumbar degenerative disc disease.

4. The claimant does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CRF 404.1567(b) and 416.967(c), except he is limited to frequent climbing, balancing, stooping, crouching, kneeling and crawling.

6. The claimant is capable of performing his past relevant work as a machine operator specialist. This work dose not require the performance of work related activities precluded by his residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from July 22, 2008, through the date of this decision. (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 9-17).

## VI. **ANALYSIS**

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[4] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

---

[4] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

Pickett objects to the ALJ's findings on his RFC. He contends that the ALJ did not comply with the Eleventh Circuit's three-part pain standard in discrediting Pickett's subjective pain testimony. (Doc. 11 at 3-4). More specifically, Pickett argues that there was not substantial evidence to support the ALJ's stated reasons for discrediting his testimony. (*Id.* at 4). According to Pickett, the medical evidence on record supports his testimony, and none of the other evidence cited by the ALJ discredits him.

The Eleventh Circuit has laid out a three-part standard to apply when a claimant attempts to demonstrate disability through his or her own subjective testimony. The standard requires:

(1) evidence of an underlying medical condition, and either:

(2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or

(3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added). In order to discredit the subjective testimony of the claimant, the ALJ must give "explicit and adequate reasons for doing so." *Id.*

In this case, it is not disputed that the ALJ discussed the relevant evidence thoroughly. Rather, Pickett argues that the ALJ was incorrect to conclude that the

evidence was inconsistent with his testimony. The court will discuss the relevant categories of evidence in turn.

### A. The Medical Evidence On Record Fails To Confirm The Alleged Severity Of The Pain

As the ALJ noted, the medical records are limited.[5] Pickett visited his primary care physician, Dr. Wayne Thomas, six times in the period in question. On February 23, 2010, Pickett complained primarily of dizziness and lightheadness, but also reported abdomen and lower back pain. (Tr. 210). Dr. Thomas made several diagnoses, but none related to his back pain, and he noted that Pickett's abdomen was normal. (Tr. 211). Two weeks later, on March 8, Pickett returned for a follow-up to discuss his blood pressure, but made no complaints of back pain. (Tr. 210). Pickett came again six months later, on September 8, 2010, and complained of gastrointestinal reflux problems and mucus. (Tr. 209) Again, he did not complain of any back problems, and Dr. Thomas's physical examination found his back to be normal. (*Id.*).

At his next visit, on March 8, 2011, Pickett told Dr. Thomas that he had filed a disability claim and complained of chronic back pain. (*Id.*). Dr. Thomas diagnosed him with back pain and disc disorder, but did not prescribe any medication or

---

[5] It is well-settled that "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Therefore, thIS lack of evidence tends to weaken the claimant's case.

recommend any treatment or testing. (*Id.*). Pickett returned eleven months later, on February 14, 2012, but only to discuss chest discomfort and belching after eating spicy foods. (Tr. 214). Two months later, on April 13, 2012, he came again to Dr. Thomas to complain of lower back pain radiating to his hips and groin, and stated that the pain grew worse as the day progressed. (*Id.*). Dr. Thomas noted only that his lumbar area was tender. (*Id.*). However, he did prescribe Robaxin and Relafen for muscle spasms and back pain. (*Id.*). He also referred[6] Pickett to Dr. Ghavam, an orthopedist, and scheduled him for a followup in three months. (*Id.*). However, there is no evidence that Pickett returned for that followup.

Dr. Ghavam saw Pickett on April 27, 2012. Pickett told him that he had suffered from low back pain for over twenty years, but that it had gotten "much worse recently." (Tr. 217). He stated that the pain did not radiate to his legs, that he had "some achiness in his hips and joints but nothing severe," and that the pain was worsened by increased activity. (*Id.*). Dr. Ghavam's physical examination found no deformity or tenderness in his spine, no muscle atrophy, and a full range of motion throughout. (*Id.*). The x-rays revealed well-preserved disc spaces and no significant deformity. (*Id.*). Dr. Ghavam diagnosed Pickett with chronic low back pain syndrome

---

[6] Pickett asserts that "referral to a specialist is indicative that his treating physician believed he was in pain but was simply unable to cure the same." (Doc. 11 at 5). This inference is unwarranted. Dr. Thomas noted, at the beginning of the office visit, that Pickett "wanted to see primary [doctor] before going to specialist." (Tr. 214).

and recommended an MRI. (*Id.*). However, Pickett never had the MRI done. (Tr. 25).

The final piece of medical evidence is a disability examination performed by Dr. Marlin Gill on January 24, 2011. Pickett told Dr. Gill that his back pain started twenty years earlier but had worsened recently, and that he now had constant pain in his lumbar area. (Tr. 205). He testified that his back pain increased if sat for too long, made any back movements such as bending or twisting, and stood or walked. (*Id.*). Dr. Gill noted that Pickett reported "some discomfort" with lumbar movement, but that there was no tenderness in his back or abdomen, and that he was able to bend forward to an 80 degree and come back erect. (Tr. 205-06). He further noted that Pickett could squat down and come up again, and that he was able to walk across the room on his tiptoes and on his heels. (Tr. 206). Dr. Gill performed x-rays that found slight narrowing of disc space at L5-S1 and mild facet arthrosis at L5, but otherwise no problems. (*Id.*). He found Pickett to have low back pain, mild degenerative disc disease and facet arthrosis, but did not opine as to Pickett's functional capabilities or limitations. (*Id.*).

Picket purports to deduce from these records that the ALJ's RFC finding of medium work with certain restrictions is incorrect. (Doc. 11 at 5). However, these records do not indicate a more limited RFC. They contain diagnoses of conditions that can cause some back pain, but disability is determined by functional limitations

imposed by the condition, not a mere diagnosis. *See Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The bare diagnoses of "low back pain" and "mild degenerative disc disease" are not accompanied by any indications of severe medical conditions that would obviously indicate more extensive limitations. Neither did any of the doctors note any significant functional restrictions during their examinations. In fact, Dr. Gill's physical examination, which contains the most extensive findings on Pickett's capabilities in the record, found only "some discomfort" in lumbar movement; there were no limitations in ability to lean over, squat and stand, and walk. (Tr. 206-06). Therefore, the ALJ's reasoning was correct; the medical records do not give objective evidence confirming the severity of his alleged pain, as required under the second prong of the Eleventh Circuit's pain standard.[7]

### B. The ALJ Did Not Err In Assigning Little Weight To Dr. Thomas's Medical Source Statement

Pickett makes the conclusory assertion that the ALJ erred in assigning little weight to Dr. Thomas's medical source statement. (Doc. 11 at 7). This form, filled out by Dr. Thomas on August 22, 2012 (four months after he last saw Pickett and first prescribed any medication for back pain) is the only medical source statement on

---

[7] Pickett has not argued that evidence supports the alternative way a claimant can satisfy the second prong of the pain standard: that the "objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." The court's review of the evidence confirms that Pickett's objectively determined medical conditions do not reach that level of severity.

record.

Dr. Thomas opined that in an eight-hour workday Pickett was limited to: standing for two hours at a time and four hours total, walking for half an hour at a time and three hours total, and sitting for four hors at a time and six hours total. (Tr. 224). The opinion stated that Pickett could lift and carry only less than five pounds frequently, ten pounds occasionally, and never more than twenty. (*Id.*). He indicated that Pickett was limited to only "occasionally" performing the following functions: pushing and pulling (with each arm and leg), climbing, balancing, stooping, kneeling, crouching, crawling, and reaching. (*Id.*). Dr. Thomas also indicated that he should never be exposed to extreme cold, extreme heat, airborne substances, and moving mechanical parts, and should never work in high, exposed places. (Tr. 225). Finally, he indicated that Pickett should only occasionally work in high, exposed places or drive automobile equipment. (*Id.*).

The ALJ assigned little weight to Dr. Thomas's opinion on the grounds that it was inconsistent with his own records and findings, as well as the overall weight of the evidence. (Tr. 15). A review of Dr. Thomas's records supports the ALJ's assessment. Dr. Thomas first diagnosed Pickett with back pain after Pickett told him that he had filed a disability claim, but even then did not recommend any treatment or testing. (Tr. 214). It was not until over a year later that Dr. Thomas prescribed

medication for Pickett's back pain (Tr. 214), and the record does not indicate that Pickett ever returned to Dr. Thomas for a follow-up before Dr. Thomas filled out the medical source opinion form four months later. There also is no evidence that Dr. Thomas inquired into Pickett's functional capacity or performed any functional assessment before completing that form. This record makes it implausible that Dr. Thomas had a basis for assessing Pickett with such extensive limitations. Therefore, the ALJ had substantial evidence for assigning little weight to Dr. Thomas's statement.

> C. Evidence Of Pickett's Daily Activities Supports The ALJ's Credibility And RFC Findings

Pickett also disputes the ALJ's finding that evidence of his daily activities discredits his subjective testimony. The ALJ pointed to the lack of emergency medical treatment or hospitalization and to Pickett's only sporadic use of over-the-counter pain medication, concluding that these facts were inconsistent with Pickett's claim that he regularly suffered pain of seven on a ten point scale. (Tr. 14, 30). The ALJ also found Pickett's daily activities — cooking, cleaning, dishwashing, laundry, mowing grass, driving, shopping, and social activities — to be inconsistent with his allegations of disabling pain. (Tr. 14).

Pickett does not address his lack of treatment and limited use of medication, but does argue against the ALJ's conclusion that his daily activities rule out the presence

of disabling pain. (Doc. 11 at 7). Pickett's first argument is that he did not actually engage in some of the activities cited by the ALJ. (*Id.* at 8). He refers to his testimony during the hearing before the ALJ, where he testified that he did not do dishes, clean his house, cook, or grocery shop. (*See* Tr. 32). Second, Pickett argues that he only engaged in some of the other activities occasionally, not, as the ALJ stated, on a regular basis, and that some of them cause him extensive pain. (*Id.* at 8).

The ALJ discussed the portions of Pickett's testimony that alleged limitations on his daily activities from his pain, but found his testimony to be inconsistent with the weight of the evidence. (Tr. 13-15). Consideration of the weight of the evidence supports the ALJ's findings. The ALJ's summary of Pickett's daily activities (Tr. 14) reflect's Picket's own statements made on his function report and reported to Dr. Gill. (Tr. 162-69, 205). Pickett has made no attempt to explain the inconsistency between those statements and his testimony at the hearing. Because other pieces of evidence (discussed *supra*) also conflicted with Pickett's testimony as to his level of pain, the ALJ had additional reasons to discount it. The ALJ had substantial evidence for finding that Pickett's testimony at the hearing was not fully credible and that his daily activities supported the ALJ's RFC determination.

> D. The ALJ Had Substantial Evidence For His RFC Finding Even Without The Support Of A Medical Source Statement

There remains one further issue unaddressed by the parties but which the court

considers to need discussion: the lack of a medical source statement to support the ALJ's findings on Pickett's RFC. The only medical source statement, which came from Dr. Thomas, was assigned little weight by the ALJ. (Tr. 15). Although the Eleventh Circuit has never issued a binding opinion on the issue, there is strong persuasive authority for the proposition that an ALJ should only make an RFC assessment without support from a medical source statement when there is clear evidence of few limitations. *See, e.g., Castle v. Colvin*, 557 F. App'x 849 (11th Cir. 2014) (unpublished);[8] *Manso–Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15, 17 (1st Cir. 1996) ("[W]here the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment"); *Rogers v. Barnhart*, No. 3:06–CV–0153–JFG, (Doc. 13 at 5) (N.D.Ala. Oct. 16, 2006) ("An ALJ is allowed to make some judgments as to residual physical functional capacity where so little physical impairment is involved that the effect would be apparent to a lay person").

In *Castle*, where the ALJ determined there was no disability without a supporting medical source statement, the Eleventh Circuit cited four facts as providing substantial evidence: the claimant had never visited a doctor in the period between his

---

[8] As an unpublished opinion, *Castle* is not binding; instead, it is persuasive authority. *See* 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

alleged onset date and date last insured, denied having the musculoskeletal problems that normally would accompany his alleged disability, reported engaging in activities that fell into the category of light work, and had been given a release without work restrictions by a doctor. 557 F. App'x at 850-51, 853. Similar facts are present in this case, albeit to a lesser degree. Pickett had very few visits to a doctor for back pain according to the evidence on record. Furthermore, he rarely used pain medication, even over-the-counter medication. He also reported engaging in a wide variety of tasks that could fall into the category of medium work.

In addition to these considerations, the court also finds it significant that Pickett has only one severe disability: lumbar degenerative disc disease. The presence of multiple disabilities, or one unusual or complex disability, would make the support of a medical source opinion necessary for an RFC determination. However, a disc problem is neither rare nor particularly complex in its effects. In this case, therefore, the lack of a medical source statement did not preclude the ALJ from having substantial evidence for his RFC findings.

## VII. <u>CONCLUSION</u>

For the foregoing reasons, the decision of the Commissioner is due to be, and hereby is, **AFFIRMED**. A separate final judgment will be entered.

**DONE** and **ORDERED** this the 24th day of February, 2015.

                                                **VIRGINIA EMERSON HOPKINS**
                                                United States District Judge